**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jay Thorpe and Kim Thorpe,<br>Plaintiffs,<br>v.<br>WaterTec of Tucson, Inc., an Arizona corporation; A.O. Smith Corporation, a Delaware corporation; and DOES 1–10, inclusive,<br>Defendants. | No. CV-26-00006-TUC-SHR (EJM)<br><br>**ORDER** |

Currently pending before the Court is Plaintiffs' Motion for Remand (Doc. 5). Defendant A.O. Smith Corporation has filed a response in opposition (Doc. 14), and Plaintiffs replied (Doc. 15).[1] The motion is ripe for review. In its discretion, the Court finds this case suitable for decision without oral argument. *See* LRCiv. 7.2(f). The Parties have more than adequately presented the facts and legal arguments in their briefs and supporting documents, and the decisional process would not be significantly aided by oral

[1] Plaintiffs have filed several supplemental documents in support of their Motion for Remand. *See* Pls.' Suppl. Memo in Support of Mot. to Remand (Doc. 9); Pls.' Suppl. Jurisdictional Memo. Re Proc. Defect in Removal (Doc. 16); Pls.' Notice of Suppl. Authority (Doc. 21). Neither the Federal Rules of Civil Procedure, nor the Rules of Practice and Procedure of the U.S. District Court for the District of Arizona ("Local Rules") provide for the filing a surreply as a matter of right. *See* Fed. R. Civ. P. 7; LRCiv. 7.2. Plaintiffs' Supplemental Jurisdictional Memo (Doc. 16) is an improper surreply. Defendant has requested that this second supplement (Doc. 16) be stricken. The Court will deny the Defendant's request; however, it cautions Plaintiffs that they must abide by the rules of procedure contained in both the Federal Rules of Civil Procedure, as well as this Court's Local Rules. *See King v. Atiyeh*, 814 F.3d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants.").

argument. As discussed below, the Court will deny Plaintiffs' motion for remand.

## I. BACKGROUND

Plaintiffs' original complaint was filed in the Arizona Superior Court, Pima County on November 3, 2025. *See* Compl. (Doc. 1-3). The complaint names WaterTec of Tucson, Inc. and A.O. Smith Corporation as Defendants. *See id*. Plaintiffs allege "claims for strict product liability, negligence, breach of implied warranties, negligence per se, consumer fraud, failure to warn/post-sale duty to warn, successor liability, and declaratory/injunctive relief arising out of design, installation, leasing, and maintenance of a residential water-conditioning system installed circa May 2024 at Plaintiffs' Tucson residence and serviced for approximately 20 years on an ongoing lease." *Id*. at § I.1. Under the section "Jurisdiction and Venue," the Complaint asserts "[s]ubject-matter jurisdiction lies under A.R.S. § 12-123 and Ariz. Const. art. VI, § 14[;] [and] [t]he controversy exceeds $20,000 exclusive of interest, fees, and costs." *Id*. at § III.11. The Complaint does not otherwise contain a specific damage amount. *See id*. On December 12, 2025, Plaintiffs served their Rule 26.1 Initial Disclosure Statement ("Initial Disclosure") (Doc. 1-3). Def.'s Not. of Removal (Doc. 1) ¶ 5. That disclosure states, "Based on information presently known and without the benefit of intrusive testing, total damages are estimated to exceed $196,000 and may exceed $440,000, subject to refinement through discovery and expert analysis." Pls.' Init. Discl. (Doc. 1-3) at 35.[2]

On January 5, 2026, Defendant A.O. Smith Corporation removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. On January 16, 2026, Plaintiffs filed a Motion for Remand (Doc. 5). Plaintiffs assert several reasons in support of remand, including 1) the removal was not timely; 2) there is not complete diversity amongst the parties; 3) the forum defendant rule bars jurisdiction; and 4) Defendant's notice to them was improper. Suppl. (Doc. 9).

---

[2] Page citations refer to the Court's Case Management/Electronic Case Files ("CM/ECF") page numbers, unless otherwise noted.

## II. LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction and generally can resolve only the cases that Congress grants them power to hear." *Hain Celestial Group, Inc. v. Palmquist*, 607 U.S. 421, 424 (1994); *see also* U.S. Const. art. III. District courts have original jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in section 1603(a) of this title as plaintiff and citizens of a State or of different States." 28 U.S.C. § 1332(a). This is referred to as diversity jurisdiction. Section 1441, Title 28, United States Code, delineates which actions are removable. "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

Section 1446, Title 28, United States Code, outlines the procedures governing the removal process. The statute sets forth the initial time for removal as follows:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting for the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever is shorter.

28 U.S.C. § 1446(b)(1). If, however, "the case started by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Furthermore, where removal is based upon diversity of citizenship, "[if] the

case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an "other paper" under subsection (b)(3)." 28 U.S.C. § 1446(c)(3)(A). A defendant seeking to remove a case based on diversity jurisdiction must do so within one (1) year following commencement of the action. 28 U.S.C. § 1446(c)(1).

## III. ANALYSIS

### *A. Timeliness of Removal*

Plaintiffs urge that Defendant's "[r]emoval was not timely under 28 U.S.C. § 1446[.]" Pls.' Suppl. Mem. (Doc. 9) at 2. Plaintiffs observe that they disclosed their alleged "damages in good faith using conditional language (e.g., 'estimated,' 'may exceed'), accurately reflecting unresolved uncertainty." *Id*. They go on to assert that "[c]ompliance with a mandatory disclosure rule cannot be used to manufacture federal jurisdiction." *Id*. Plaintiffs argue that "[e]stimates, conditional language, and unresolved contingencies, standing alone, do not provide" the "clear and unequivocal notice that the amount in controversy exceeds the jurisdictional threshold" required for removal. *Id*. In Plaintiffs' view, because they did not produce a sum certain, their "compliance with Rule 26.1 did not constitute an 'other paper' triggering a new removal period." *Id*. at 3. Additionally, Plaintiffs claim that additional "intrusive testing is required to determine whether damage exists at all," which means "removability was not ascertainable for purposes of § 1446." Pls.' Suppl. Mem. (Doc. 9) at 3. Plaintiffs arguments misunderstand the purpose and function of the removal process.

#### **<u>1. Thirty-day time period for removal</u>**

As discussed, *supra*, "section 1446(b) identifies two thirty-day periods for removing a case." *Carvalho v. Equifax Info. Svcs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010). "The first thirty-day removal period is triggered if the case stated by the initial pleading is removable on its face." *Id*. (quotations and citations omitted). "The second thirty-day

removal period is triggered if the initial pleading does not indicate the case is removable, and the defendant receives 'a copy of an amended pleading, motion, order or other paper' from which removability may first be ascertained." *Id.* (citing 28 U.S.C. § 1446(b)). Section 1446(c)(3)(A), Title 28, United States Code, directs that discovery responses are to be considered "other papers" for removal purposes. Furthermore, a "disclosure statement is the primary vehicle by which the parties are informed of their opponent's case, and thus, it should fairly expose the facts and issues to be litigated." *BBK Tobacco & Foods, LLP v. Skunk, Inc.*, No. CV-18-02332-PHX-JAT, 2021 WL 11886090, at *2 (D. Ariz. Feb. 12, 2021) (quotations omitted) (citing *Bryan v. Riddel,* 875 P.2d 131, 136 (Ariz. 1994)).

Plaintiffs' prayer for relief in their initial complaint sought a) compensatory damages for all direct and consequential property loss; b) rescission of the lease and restitution of all payments made; c) reimbursement of diagnostic, testing, and expert expenses, and costs of mitigation/replacement; and d) punitive/exemplary damages for willful and reckless conduct. Compl. (Doc. 1-3) at 8. They claimed damages in excess of $20,000, but the Complaint was otherwise silent as to the amount sought. *See* Compl. (Doc 1-3) at 3. Thus, "it is not facially evidence from the [Plaintiffs'] complaint that the controversy involves more than $75,000." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1091 (9th Cir. 2003). "[T]he ground for removal must be revealed affirmatively in the initial pleading in order for the first thirty-day clock under § 1446(b) to begin." *Kuxhausen v. BMW Fin. Svcs. NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013) (citing *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689,693 (9th Cir. 2005)). Because it was not clear that diversity jurisdiction existed at the time of Plaintiffs' filing their initial complaint, the initial thirty-day clock did not begin to run. Correctly, Defendant did not attempt removal of the case at this point.

On December 12, 2025, Plaintiffs served their Rule 26.1 Initial Disclosure Statement ("Initial Disclosure") (Doc. 1-3). Def.'s Not. of Removal (Doc. 1) ¶ 5. That disclosure states, "Based on information presently known and without the benefit of

intrusive testing, total damages are estimated to exceed $196,000 and may exceed $440,000, subject to refinement through discovery and expert analysis." Pls.' Init. Discl. (Doc. 1-3) at 35. This is the first time Plaintiffs suggested a case value in excess of the $75,000 jurisdictional limit for federal court. Furthermore, Plaintiffs' disclosure statement is considered "other paper." *See* 28 U.S.C. § 1446(c)(3)(A). As such, the second thirty-day removal period was triggered. *Carvalho*, 629 F.3d at 885. Accordingly, Defendant filed its Notice of Removal (Doc. 1) on January 5, 2026, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Defendants' removal notice was within the second thirty-day removal period, as well as less than one-year from Plaintiffs' initiation of this cause of action.

**2. Amount in controversy**

The purpose of the amount in controversy requirement is "to ensure that a dispute is sufficiently important to warrant federal-court attention." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010). Regarding diversity jurisdiction, Congress's actions have been "of jealous restriction, of avoiding offense to state sensitiveness, and of relieving the federal courts of the overwhelming burden of 'business that intrinsically belongs to the state courts' in order to keep them free for their distinctive federal business.'" *Id*. (citing *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 76 (1941)). In general, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Id*. (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). Therefore, for purposes of removal, "the party asserting federal jurisdiction has the burden of showing the case meets the statutory requirements for the exercise of federal jurisdiction and therefore belongs in federal court." *Id*. Defendant may meet its burden by establishing by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum of $75,000. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 n.2 (9th Cir. 2018).

The Ninth Circuit Court of Appeals has recognized that "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis*, 627 F.3d at 400 (citations omitted). "Rather,

it is the amount at stake in the underlying litigation." *Chavez*, 888 F.3d at 417 (quotations and citations omitted). In other words, "the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (emphasis in original) (quotations and citations omitted). In analyzing whether federal jurisdiction exists, "the amount in controversy is assessed at the time of removal, . . . [meaning] that [the Court] consider[s] damages that are claimed at the time the case is removed by the defendant." *Chavez*, 888 F.3d at 417. "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite . . . amount[.]'" *Arias*, 936 F.3d at 927. "In sum, the amount in controversy includes all relief claimed at the time of removal to which the plaintiff[s] would be entitled if [they] prevail[]." *Chavez*, 888 F.3d at 418.

Defendant attached Plaintiffs' Initial Disclosure Statement as an exhibit to its Notice of Removal. *See* Exh. "D" (Doc. 1-3). In that disclosure statement, Plaintiffs claim that "[b]ased on information presently known and without the benefit of intrusive testing, total damages are estimated to exceed $196,000 and may exceed $440,000, subject to refinement through discovery and expert analysis." *Id*. at 35. In support of their Motion to Remand, Plaintiffs' assert that "at the time of removal:" 1) the "existence of damage remained unresolved"; 2) the "scope of any remediation remained unknown"; and 3) "[a]ny determination of damages depended on testing Defendants opposed and had not yet agreed to discuss." Pls.' Suppl. Mem. (Doc. 9) at 3. There is nothing in any of Plaintiffs' filings to suggest that their damages estimate in excess of $196,000 is incorrect. Indeed, to the contrary, Plaintiffs acknowledge that their disclosed damages were made "in good faith using conditional language (e.g., 'estimated,' 'may exceed'), accurately reflecting unresolved uncertainty." *Id*. at 2. As the Court explained, *supra*, "[a]n assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite . . . amount[.]'" *Arias*, 936 F.3d at 927. Defendant has shown that Plaintiffs' potential recovery *could* exceed

$196,000, and as such, has met its burden to show the amount in controversy is greater than the $75,000 jurisdictional limit. *See Arias*, 936 F.3d at 927.

**3. Conclusion**

Based on the foregoing, the Court finds that Defendant timely removed this cause of action and has met its burden to establish that the $75,000 amount in controversy threshold has been met for federal jurisdiction. Defendant did not "manufacture" jurisdiction, rather the Plaintiffs' own statements establish that the amount in controversy is in excess of $196,000. Removal is not a punishment, merely a jurisdictional choice, which Defendant was within its rights to make.

***B. Complete Diversity and the Forum Defendant Rule***

Plaintiffs argue that they have named WaterTec of Tucson, Inc. as a defendant and that their presence in this litigation making removal "procedurally improper" and "in direct violation of 28 U.S.C. § 1441(b)(2) (the 'forum defendant rule'). Pls.' Mot. for Remand (Doc. 5) at 1; *see also* Pls.' Reply (Doc. 15) at 3. Plaintiffs are mistaken.

**1. Water Tec of Tucson, Inc.—the Forum Defendant Rule**

Plaintiffs correctly cite 28 U.S.C. § 1441(b)(2) for the forum defendant rule. That section states that "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). As explained below, however, Plaintiffs' subsequent representations about Water Tec's presence in this litigation are unsupported by the evidence. *See* Pls.' Suppl. Jurisdictional Mem. (Doc. 16) at 2.

Section 1441(b)(2) applies to "parties in interest properly joined and served as defendants[.]" 28 U.S.C. § 1441(b)(2). As Defendant A.O. Smith Corporation has explained, its wholly owned subsidiary, A.O. Smith Water Treatment (North America), "acquired Water Tec of Tucson, Inc. via merger on or around September 2023." Def.'s Response (Doc. 14) ¶ 6, Avance Decl. (Exh. "A") ¶ 7. On December 17, 2024, a Statement of Merger was executed, with A.O. Smith Water Treatment (North America), Inc. listed as

the surviving entity and Water Tec of Tucson, Inc. as the merging entity. Response (Doc. 14), Statement of Merger (Exh. "A.4"). A review of the Arizona Corporation Commission website shows Water Tec of Tucson, Inc.'s "Business Status" as "Inactive" and the reason for that status is "Merged to/with other entity." *See* Ariz. Corp. Comm'n, *Ariz. Bus. Ctr.—Bus. Search*, https://arizonabusinesscenter.azcc.gov/businessinfo ("WaterTec" as search term) (last visited Aug. 28, 2026).[3] The "Status Date" is 12/31/2024, which is the "Delayed Effective Date" reflected in the Statement of Merger. *Compare id.*, *with* Response (Doc. 14), Exh. "A.4" at 45. Defendant A.O. Smith Corporation represents that Water Tec is a tradename under which it does business in Arizona. Response (Doc. 14) at 6, Exh. "A" ¶ 8.

Because Water Tec of Tucson is a trade name of A.O. Smith Corporation, it is not a legal entity subject to suit.[4] *See Beltran v. Harah's Ariz. Corp.*, 202 P.3d 494, 496 n.1 (Ariz. Ct. App. 2008) (listing various trade names of Harrah's Entertainment, Inc. named in the complaint and noting they "are not legal entities subject to suit); *see also Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 635 n.2 (4th Cir. 2002) (Recognizing CheckPoint is a trade name and not a separate legal entity capable of suit); *Afshari v. Montana Black Gold*, No. 20-5362, 2020 WL 9217980, at *3 (6th Cir. 2020) (reiterating *Snowden* rule); *Watkins v. Progressive Ins. Co.*, No. 3:25-cv-01284-YY, 2025 WL 4354384 at *2 (D. Or. Oct. 14, 2025) (recognizing brand name or trade name is not a legal entity for diversity purposes and reviewing cases). The Supreme Court of the United States has instructed federal courts to "disregard nominal or formal parties and rest jurisdiction

[3] "[U]nder Fed. R. Evid. 201, a court may take judicial notice of matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quotations and citations omitted), *overruled on other grounds by Gulbraith v. County of Santa Calra*, 307 F.3d 1119 (9th Cir. 2002).

[4] Black's law dictionary defines "Tradename" as follows:

> A name, style, or symbol used to distinguish a company, partnership, business, or nonprofit organization (as opposed to a product or service); the name under which a firm operates. • A tradename is a means of identifying a business — or its products or services — to establish goodwill. It symbolizes the business's reputation. Cf. brand; d/b/a; trademark; *business name* under name.

*Tradename*, Black's Law Dictionary (12th ed. 2024).

only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) (citations omitted). The Ninth Circuit Court of Appeals has further emphasized "[n]or may the presence of a sham or nominal party defeat removal on diversity grounds." *Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1132 (9th Cir. 2002).

Here, Plaintiffs assert that "corporate restructuring or parent ownership does not, by itself, eliminate a forum defendant's citizenship where the entity continues to operate from Arizona, maintain facilities and personnel in Arizona, conduct invoicing, manufacturing, and distribution in Arizona, and hold itself out publicly as operating from Arizona." Pl.'s Suppl. Mem. (Doc. 9) at 4; *see also* Reply (Doc. 15) (documenting Plaintiffs' visit to "Water-Tec of Tucson's retail showroom located at 4601 South 3rd Avenue, Tucson, Arizona[.]"). Plaintiffs further assert that they "served Watertec of Tucson, Inc. by certified mail at its Tucson business address pursuant to Arizona Rule of Civil Procedure 4.1(d) and (i)" and received a return receipt making it "properly joined and served before removal."[5] Pls.' Suppl. Jurisdictional Mem. (Doc. 16) at 2. Rule 4.1(i), Arizona Rules of Civil Procedure govern service on corporations, partnerships, or other unincorporated associations, and provides:

> If a domestic . . . corporation, partnership or other unincorporated association **has the legal capacity to be sued** and has not waived service[,] . . . it may be served by delivering a copy of the summons and the pleading being served to a partner, an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process **and**—if the agent is one authorized by statute and the statute so requires—by also mailing a copy to each defendant."

Ariz. R. Civ. P. 4.1(i) (emphasis added).

"Certainly a plaintiff can decide whom to sue, but jurisdictional *facts*, not fiction even if truly believed, are dispositive." *Strotek Corp.*, 300 F.3d at 1132. The facts in this

[5] In their Complaint, Plaintiffs assert that service may be made pursuant to Rule 4.1(k), Arizona Rules of Civil Procedure. Compl. (Doc. 1-3) ¶ III.14. This rule, however, provides means for alternative service which require court approval. There is no evidence before this Court that the state court approved any type of alternative service.

case establish that Water Tec Tucson, Inc., while named in Plaintiffs' complaint, does not exist as a legal entity capable of being sued. Because it is does not have the legal capacity to be sued, Plaintiffs could not have effectuated proper service upon it. Furthermore, the Arizona Supreme Court has observed, "the return postal receipt that accompanies certified mail does not satisfy the more formal 'acknowledgement under oath' requirement of Rule 4.1(c)" and found service by certified mail, without more, to be defective. *Postal Instant Press, Inc. v. Corral Restaurants, Inc.*, 925 P.2d 260 (Ariz. 1996). Therefore, the facts before this Court do not support that Water Tec of Tucson is a defendant for purposes of diversity jurisdiction and the forum defendant rule does not apply.[6]

**2. Complete Diversity**

Plaintiffs are citizens of Arizona. Compl. (Doc. 1-3) ¶ II.6. Defendant A.O. Smith Corporation is a Delaware corporation with its principal place of business in Milwaukee, Wisconsin. Response (Doc. 14), Avance Decl. (Exh. "A") ¶ 4, Exhs. "1" and "2."

Complete diversity "means that no adverse party is from the same State, and the amount in controversy exceeds $75,000." *Hain Celestial Group, Inc. v. Palmquist*, 607 U.S. 421, 425–26 (2026) (citations omitted). Although Plaintiffs recognize that "a corporation is a citizen of its state of incorporation and the state where it maintains its principal place of business[,]" they argue that Defendant A.O. Smith's "nerve center" is in Arizona. Pls.' Reply (Doc. 15) at 3–4 (citing 28 U.S.C. § 1332(c)(1); then citing *Hertz Corp. v. Friend*, 559 U.S. 77, 92–3 (2010)). A corporation's "principal place of business," referred to as the corporation's "nerve center," is "the place where a corporation's officers direct, control, and coordinate the corporation's activities[,]" and "should normally be the place where the corporation maintains its headquarters[.]" *Hertz Corp.*, 559 U.S. 92–3. Plaintiffs mistakenly believe that because Water Tec of Tucson has a store in Tucson, Defendant A.O. Smith's "nerve center" is here in Arizona. This is similar to the mistake

---

[6] Because Water Tec of Tucson does not exist as a party in this litigation, unanimity of consent is inapplicable. *See* 28 U.S.C. § 1446(b)(2)(A) (requiring "all defendants who have been properly joined and served [to] join in or consent to the removal of the action.").

made by the district court in *Hertz Corp.*—relying on the "plurality of each of the relevant business activities" to determine Hertz's principal place of business, and which the Supreme Court corrected. *See id*.

Here, Defendant A.O. Smith's principal place of business is Milwaukee, Wisconsin. Response (Doc. 14), Avance Decl. (Exh. "A") ¶ 4, Exh. "2"; *see also* Ariz. Corp. Comm'n, *Ariz. Bus. Ctr.—Bus. Search*, https://arizonabusinesscenter.azcc.gov/businessinfo (Milwaukee addresses for directors and other officers of A.O. Smith Water Treatment (North America), Inc. dba Water Tec of Tucson, Inc.) ("WaterTec" as search term) (last visited Aug. 28, 2026). As such, the parties are residents of different states, and the Court finds there is complete diversity amongst them.

### *C. Service of Notice of Remand*

Plaintiffs assert that Defendant's Certificate of Service reflects "electronic service only[,]" but "Plaintiffs are pro se litigants and are not registered CM/ECF users." Pls.' Suppl. Mem. (Doc. 9) at 4. Plaintiffs further assert that Defendants did not serve the notice of removal, and Plaintiffs only learned of it through the District Court." *Id*. at 4–5; *see also* Reply (Doc. 15) at 4. Plaintiffs urge that this supports remand. Pls.' Suppl. Mem. (Doc. 9) at 5; *see also* Reply (Doc. 15) at 4–5.

Section 1446(d), Title 28, United States Code, states as follow:

> Promptly after filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.

28 U.S.C. § 1446(d). The statute does not define the term "promptly." There is no specific time to provide written notice, and courts consider the facts of an individual case and consider whether a removing defendant unduly delayed giving notice to the other side. *See* 14 C Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 3735 (Rev. 4th ed. 2026). Furthermore, the Ninth Circuit Court of Appeals has found that procedural defects in removal, such as the time limit for removal petitions, are "formal and modal,"

and not jurisdictional. *See Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980) (citations omitted). Additionally, "more recent authorities [have held] that a good faith effort to provide written notice to the plaintiff satisfies the requirement absent any prejudice to the plaintiff." *Busby v. Capital One, N.A.*, 759 F. Supp. 2d 81, 85 (D.D.C. 2011) (reviewing cases).

Here, Defendant A.O. Smith filed their Notice of Removal in this Court on January 5, 2026. (Doc. 1). Defendant also filed a notice in the Arizona Superior Court in Pima County that same day. *See id.*, Exh. "F" at 43. Additionally, Defendant attempted to e-mail a copy to Plaintiffs that day; however, there was an error in the e-mail address used.[7] Response (Doc. 14), Fleming Decl. (Exh. "B") ¶¶ 2–3. Defendant did not receive a non-delivery notice. *Id.*, Exh. "B" ¶ 4. On January 16, 2026, Plaintiffs filed their motion for remand. (Doc. 5). Defendant avers that this was the first time that it learned Plaintiffs had not received its previously e-mailed documents, including the Notice of Remand. Response (Doc. 14), Exh. "B" ¶ 5. On January 22, 2026, Defendant e-mailed a copy of the notice, as well as sent a physical copy, to Plaintiffs. *Id.*, Exh. "B" ¶ 6, E-mail from Chris Wisniewski, Legal Admin. Assist., Snell & Wilmer, to Jay Thorpe (Jan. 22, 2026 3:14 PM) (Attach. "2"). Plaintiffs do not assert that they did not receive these later e-mails and attachments. They only argue that Defendant had previously received e-mails from Ms. Fleming, so the sworn declaration contradicts the evidence. Reply (Doc. 15) at 4–5.

Receiving e-mails from Ms. Fleming does not show that her declaration is incorrect. Mis-typing an e-mail address, particularly where a single letter was dropped, is a common occurrence and does not, standing alone, suggest bad faith. Defendant learned of its failure to provide a copy of the Notice of Removal on January 16, 2026—a Friday. On the following Wednesday, Defendant corrected its error by e-mailing Plaintiffs at the correct e-mail address, as well as sending a printed copy via mail, which Plaintiffs apparently received. Even if Plaintiffs never received written notice, they timely filed their motion

---

[7] Defendant e-mailed "jthorpe*****@gmail.com" instead of "jhthorpe*****@gmail.com."

for remand within thirty (30) days of Defendant's filing. 28 U.S.C. § 1447(c). Nothing further has occurred in the state court matter and Plaintiffs have had a full and fair opportunity to present their arguments for remand to this Court. "[W]here, as here, the delay [for Defendant to provide written notice] was relatively short[,] [] no action was taken by the state court[,]" and Plaintiffs had ample opportunity to argue the merits of their motion for remand, "the alleged defect is harmless and, not being jurisdictional, creates no basis for remand." *Calderon v. Pathmark Stores, Inc.*, 101 F. Supp. 2d 246, 248 (S.D.N.Y 2000).

## IV. CONCLUSION

The Court finds that there is complete diversity amongst the parties and the amount in controversy is in excess of $75,000.[8] The Court further finds that Defendant A.O. Smith timely removed this cause of action following its discovery that the amount in controversy exceeded the jurisdictional floor.

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' Motion for Remand (Doc. 5) is DENIED.

Dated this 2nd day of September, 2026.

Eric J. Markovich
United States Magistrate Judge

---

[8] The Court has reviewed *Hain Celestial Group, Inc. v. Palmquist*, 607 U.S. 421 (1994) cited by Plaintiffs in their Notice of Supplemental Authority (Doc. 20). Beyond its hornbook review of diversity jurisdiction, *Hain Celestial* is not relevant to this case. There, defendant Whole Foods, an active corporation was erroneously dismissed by the district court. *Hain Celestial*, 607 U.S. at 427–28. The issue before this Court was whether a non-existent, non-legal entity can defeat diversity jurisdiction. The Court finds it cannot.